U. S. LETTER CARRIERS MUTUAL BENE-FIT ASSOCIATION, Appellant,

v.

Chester R. SYPULSKI et ux., Appellees.

No. 16345.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 8, 1963.

Ivy Lee Buchanan, Washington, D. C., and Ernest May, Fort Worth, for appellant.

Harris, Ball & Jones and Richard O. Jones, Arlington, for appellees.

MASSEY, Chief Justice.

Our opinion in this case, filed under date of June 29, 1962, is withdrawn and the following substituted therefor.

U. S. Letter Carriers Mutual Benefit Association affords hospital and surgical expense insurance to the families of individuals qualified to receive the same. Such is by written policy contracts issued in consideration of premiums.

Chester R. Sypulski was an individual qualified to contract with the Association for such insurance and he did so. His application therefor was dated December 9, 1959, and a certificate of insurance was issued by the Association dated January 1, 1960, affording hospital and surgical insurance to Mr. Sypulski and his wife, provided necessity therefor arose out of "sickness * * * the cause of which originates while this certificate is in force * * * and after it has been in force for at least thirty days from its date."

Mrs. Sypulski incurred hospital and surgical expense in the month of May, 1960. Claim was made for benefits under the policy. The claim was denied. It was the contention of the Association that the expenses so incurred arose out of sickness which originated prior to or within thirty days after January 1, 1960, the date of the certificate.

The Sypulskis filed suit against the Association, and, following a jury trial, judgment in the amount of $845.00 was entered in their favor. The Association appealed and stands as the appellant in this court.

Judgment affirmed on condition of remittitur; otherwise, reversed and remanded.

While our action was pending on the motion for rehearing filed after our first opinion was handed down, our attention was drawn to the case of Consolidated Furniture Company v. Kelly, 1962 (Tex.Civ.App., Houston), 358 S.W.2d 956. It was felt that the decision in such case conflicted with our decision in this, and that in the event the decision in the Consolidated Furniture case should be determined to be proper, the action we should take in the instant case would be to dismiss the appeal, for the amended motion for new trial did not show on its face that it was filed with permission of the trial court. We have taken note of the fact that the Supreme Court granted a writ of error in the Consolidated Furniture case on January 23, 1963.

We have no way of knowing what the ultimate action of the Supreme Court might be in the Consolidated Furniture case. We do know that there will necessarily be some delay in receiving its decision. It may be that the losing party to this appeal might prefer to file a remittitur in order to obtain an affirmance of the judgment, or to accept a reversal and retry the case, rather than file a motion for rehearing and risk further delay. Certainly we would be disposed to delay action on a motion for rehearing should delay be requested in connection with any such motion filed. We have concluded that we should presently render this opinion.

■ At the outset we are presented with a contention that appellant's points on appeal are predicated upon an amended motion for new trial, leave to file which was not obtained from the trial court. The Sypulskis contend that Texas Rules of Civil Procedure, rule 329b, "District and County Court Cases", therefore inhibits consideration of the amended motion for new trial as an instrument presenting assignments of error upon which appellant is entitled to found the points of error presented in its brief. We overrule the contention. In the first place there is no affirmative showing in the record that appellant did not have leave of the court to file the amended motion for new trial, albeit there is likewise no showing that it did have leave. In such an instance, leave should be presumed. But assuming that leave to file the amended motion for new trial was not obtained, we nevertheless believe and hold that since the Sypulskis have not shown that the fact that appellant filed an amended motion for new trial has been the occasion of prejudice to them in affording appellant the right and the grounds for its points of error on appeal, the failure to obtain leave amounts to a mere irregularity and does not constitute such an omission as deprived the appellant of any right it otherwise would have had. W. C. Turnbow Petroleum Corporation v. Fulton, 1946, 145 Tex. 56, 194 S.W.2d 256; Holt v. Purviance, 1961 (Tex.Civ.App., Dallas), 347 S.W.2d 321, writ ref., n. r. e.

■ Appellant's first point of error reads as follows: "The insufficiency of the evidence to warrant judgment for $845.00." If the point is germane to any ground presented in the amended motion for new trial it is to that reading as follows: "Exclusive of the attorneys' fee, the sum adjudged exceeds benefits payable by the policy." Although we at first believed that the point of error was not grounded upon this assignment in the amended motion for new trial, it is our present opinion that it is properly germane to and is supported by the assignment. In this conclusion we find aid in the question raised and discussed under the rather abbreviated language of the point itself. Fambrough v. Wagley, 1943, 140 Tex. 577, 169 S.W.2d 478, 482.

The instant suit is one for health and accident benefits under a policy contract. In an instance where a claimant has established company liability in a suit for health and accident insurance benefits it is ordinarily necessary for the judge of the trial court to calculate the total amount recoverable thereunder by reference to the policy (in view of the evidence and fact findings thereunder made). He must add the amounts payable because of hospital services, surgical expenses, medicines, etc., as to which varying amounts of insurance payments are due, in order to obtain a total figure for which judgment would be properly entered. An assignment of error asserting that said total sum so awarded is in excess of the amount properly payable under policy provisions would ordinarily embrace an assertion of a want of evidence supporting said amount so calculated. If we are correct in this statement of law then appellant's point of error properly raises the question for determination.

■ In appellant's brief it was written: "Judgment was entered in his (Mr. Sypulski's) favor for $845.00; benefits, $720.00; attorneys' fee, $125.00." The statement is unchallenged. The appellant does not complain of the award of $125.00 as attorney's fee, although there was no evidence upon the matter of reasonable attorney's fee, and, in view of the fact that trial was before a jury, the question would have been one for the jury to resolve. Indeed, no issue thereon was submitted to the jury. Award of attorney's fee was apparently made by the judge of the trial court. Counsel for appellant takes the figure of $720.00 and demonstrates from the evidence that under such proof as was offered the maximum indemnity payable under the policy was $340.00. To add $125.00 as an attorney's fee results in the amount of $465.00.

It is obvious from the Sypulskis' pleadings that they sought to recover $120.00 indemnity by reason of charges for room and board incurred because of Mrs. Sypulski's eight day confinement. They also sought to recover indemnity relative to the hospital charges for operating room, X-ray, laboratory, etc. There was no proof. The necessity of such proof, under proper complaint because of its absence, is established under the authority of Mercury Life and Health Company v. Morales, 1959 (Tex. Civ. App., San Antonio), 325 S.W.2d 459. In the instant case proper complaint was made because of the absence of proof. Apart from $125.00 in attorney's fees, of which no complaint is made, the maximum liability upon appellant established in the evidence was $340.00. Combining the two figures results in the amount of $465.00. Hence, we are able to treat this figure as the maximum for which judgment could have properly been entered.

We next examine appellant's point of error reading as follows: "The insufficiency of the evidence for the verdict that none of the operations for which benefits were claimed resulted from sickness originating before January 1, 1960 (the date of the certificate) or within thirty days thereafter." A companion point complains because appellant's motion for judgment notwithstanding the verdict was overruled. To overrule the point quoted would be to overrule the companion point. By the quoted point of error we are called upon to consider the verdict returned by the jury.

Therefrom it is noticed that the only special issues submitted to the jury had relation to affirmative defenses of the appellant, and that the questions in answer to which the issues upon said defenses were to be resolved properly placed the burden upon it. In other words the appellant was in the position of trying to persuade the jury to return "yes" answers, upon a "preponderance of the evidence" in the case, to inquiries which included: did the operations for which benefits are claimed result from a sickness which originated prior to January 1, 1960, or within 30 days thereafter?

The complaint made is because of the jury's "no" answer (a refusal to find "yes" by a preponderance of the evidence) to said third question. This was substantially an inquiry as to whether the necessity for the operations was occasioned by reason of a disorder or illness of Mrs. Sypulski existent during the month of January, 1960, or prior thereto.

█ The point assigns "insufficiency of the evidence" rather than "against the great weight and preponderance of the evidence", but we believe that it is now settled that no legal distinction is to be made. In other words whether the assignment of error, and point predicated thereupon, is the want of sufficient evidence to support the finding returned by the jury—or is a complaint that such finding is against the great weight and preponderance of the evidence—it has the effect of imposing a duty upon the Court of Civil Appeals to review the whole of the evidence in the entire record in a determination of whether the jury finding of which the complaint is made is "clearly unjust". In discharging such duty the reviewing court begins with the implied concession that the answer returned by the jury was an answer which reasonable minds could reach, *and proceeds further in the determination of whether the answer so returned was clearly the product of something other than reason.* See the article by Associate Justice W. St. John Garwood

at 30 Texas Law Review 803 et seq., entitled "The Question of Insufficient Evidence on Appeal".

█ It stands self-evident that a complaining party who has been unable to persuade the jury to return an affirmative or "yes" answer to a special issue upon which he carried the burden of proof, and who presents the complaint that the jury's negative or "no" finding is against the great weight of the evidence (or finds insufficient support in the evidence) is burdened with greater difficulty than would be the case were he making like complaint because of an affirmative or "yes" answer returned on an issue as to which the burden was carried by his opponent. Indeed, the author of this opinion once expressed a belief that application of the law would foreclose any ability to sustain such a contention. See North Texas Producers Association v. Stringer, 1961 (Tex.Civ.App.), 346 S.W.2d 500, writ ref., n. r. e. He is presently convinced that the belief so expressed in said case was erroneous, and that circumstances could exist such that a negative or "no" finding would be "clearly unjust" (i. e., against the great weight of the evidence or not supported by sufficient evidence), particularly in instances where such would be a finding against the complaining party rather than a mere "refusal" to find for him. However, the author is of the opinion that the negative or "no" finding of which complaint is made in the instant case, and which amounts to a mere refusal to find for appellant, was not "clearly unjust".

█ Mrs. Sypulski had an illness about one week before Christmas in 1959, involving "low abdominal cramps", from which she had apparently recovered on date of January 5, 1960, when she went to see Dr. Andy Bowden, Jr., a gynecologist, for an examination directed toward determining whether she might wisely begin planning to have an additional child. Incident to the examination Dr. Bowden took some smears from Mrs. Sypulski's cervix and forwarded them to a laboratory for an analysis. The

analysis report returned indicated the presence of infected or abnormal cells. The explanation of the meaning of the presence of infected or abnormal cells was that such might signify some residual deposit from an infection or other physical trouble which had cleared up or been remedied, but contrariwise that such could signify that there was an existent infection or physical trouble that was producing such cells. The analyst suggested additional smears to be made after an expiration of some time for comparative purposes. Obedient thereto Dr. Bowden took additional smears on or about date of February 8, 1960, and forwarded them to the analyst. Therefrom it was at least determined that the infection or physical trouble had not cleared up, for the infected or abnormal cells were again present, as found from analysis.

The report on the second set of smears was dated February 10, 1960. A recommendation was made at the end of the report reading as follows: "Because of the atypical squamous epithelial cells suggest a cold knife conization for histiological evaluation." Dr. Bowden accordingly reported to Mrs. Sypulski and her husband and recommended that she submit herself to hospitalization and for diagnostic surgery pursuant to such confinement, i. e., "a cold knife conization" of the cervix. The testimony indicated that Dr. Bowden felt that there was no need for haste and communicated that fact to the Sypulskis. Arrangements were made for the hospitalization, and Mrs. Sypulski entered the hospital and had the "cold knife conization" on May 3, 1960. Such "conization" evidently involves the excision of a thin cone of tissue from the cervix (mouth of the womb) for the purpose of tissue examination in the laboratory.

The "conization" was performed and the tissue taken from the cervix was found to be cancerous. Pathological diagnosis included the finding, among others, of "Carcinoma-in-situ of cervix". Major surgery was therefore indicated, and without delay such was performed on May 4, 1960. A total hysterectomy was performed, plus other remedial surgery.

Appellant's theory is that the "carcinoma-in-situ" of the cervix, existence of which was discovered pursuant to the "conization" performed on May 3, 1960, necessarily existed on or before date of January 5, 1960, and certainly on said date. But for such existence, according to appellant's theory, there would have been no abnormal or infected cells in the smears taken by Dr. Bowden on that date and referred to the laboratory. The fact that there were abnormal or infected cells in the smears taken in February of 1960, convinces appellant that the abnormal or infected cells found as the result of that examination were likewise caused and occasioned by the cancerous condition actually found on May 3, 1960. Ergo, says appellant, Mrs. Sypulski had a "sickness" which existed before and certainly on date of January 5, 1960, that such "sickness" was the cause and occasion for the operations in May of 1960, wherefore the Sypulskis were not entitled to claim benefits under the policy contract in view of a provision which excluded any liability therefor.

The trouble with appellant's theory is that there was no evidence which specifically established that the cancerous condition, found on May 3, 1960, was the cause and occasion for the presence of the diseased or abnormal cells found in the smears taken January 5, 1960. The same applies to the cells found in the smears of February, 1960. Coupled therewith was the statement of Dr. Bowden that he could not say that the "carcinoma-in-situ" existed in January of 1960, and that he could not say how long Mrs. Sypulski's illness from cancer had existed. The whole of the evidence on the matter, in so far as evidence exists as to which appellant may claim benefit, is that of Dr. Bowden, supplemented by medical reports and records. The state of the evidence was such that the jury finding desired by appellant would have been warranted. Such finding would have been by way of a factual conclusion drawn by the jury. Though

warranted, such conclusion was neither such as was compelled to be drawn and a finding accordingly made, nor was the jury's refusal to so conclude and find "clearly unjust", i. e., that its negative or "no" answer to the special issue was clearly the product of something other than reason. Accordingly, appellant's point of error is overruled.

Maximum amount for which judgment could be affirmed is the amount of $465.00. We believe that the judgment of the trial court can be affirmed only upon condition of remittitur in the sum of $380.00. Should a remittitur in said amount be filed within fifteen days, judgment will be affirmed. In the event a remittitur is not so made, the case.shall stand as one in which judgment is reversed and the cause remanded for another trial.

LANGDON, J., not participating.

## SUPPLEMENTAL OPINION

MASSEY, Chief Justice.

Appellees having filed in writing the remittitur as suggested in our original opinion, it is ordered that the judgment, as reduced by the remittitur, be affirmed.